**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ROGER BROOKS                                                                                           PLAINTIFF

v.                                                            NO. 4:17CV00817 JLH

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON                                                                                              DEFENDANT

**OPINION AND ORDER**

Roger Brooks worked for AmeriGas Propane, Inc., as an area sales manager from 1998 until 2016. AmeriGas offered its employees a Group Disability Income Policy issued by Liberty Life Assurance Company of Boston and governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. Brooks applied for disability benefits under the plan, but Liberty denied his claim. Brooks sued Liberty to recover long-term disability benefits pursuant to 29 U.S.C. § 1332(a)(1)(B). This Court's review is limited to a review of the record made before the plan's administrator. The parties have stipulated to the administrative record. Brooks has moved for judgment on the record. In response, Liberty also has requested judgment on the record.

Brooks worked for AmeriGas until April 26, 2016, as an area sales manager responsible for a territory consisting of several states, the largest of all sales managers in his region. Document #21-3 at 94. His work for AmeriGas required frequent travel. *Id.* Brooks stopped working for AmeriGas in April 2016, because of several medical conditions. According to Thomas Cain, M.D., Brooks's internal medicine doctor, Brooks suffered from diabetic neuropathy, multilevel facet arthropathy, and back pain. *Id.* at 75. Brooks was prescribed Lyrica to manage his neuropathy, but the medicine caused Brooks to be sedated and sluggish; Lyrica's side effects made it unsafe for Brooks to drive and difficult for Brooks to concentrate. *Id.* Cain reports that "[w]ithout Lyrica, Mr. Brooks' pain would be sufficiently debilitating that he could [not] sit frequently (1/3 to 2/3 of the time) or stand

or walk occasionally (up to 1/3 of the time)." *Id.* Brooks unsuccessfully attempted to treat his back pain with physical therapy and steroid injections. *Id.*

Brooks received short-term disability benefits until October 2016. He then applied for long term disability benefits under the plan. In a letter dated August 29, 2016, Liberty advised Brooks that his claim was under review and also requested "[o]ffice treatment notes, test results, operative reports, prescription histories, and treatment plans from January 1, 2015 through present from Dr. Cain, Dr. Claybrook, Dr. Colclasure and Dr. Moore" *Id.* at 783. The letter also stated, "If there are any other attending physicians or specialists, including physical therapy providers, that we are unaware of, please have them forward all medical records pertinent to your disability within the timeframe stated above." *Id.* at 784.

Matthew H. Kalter, M.D., Board Certified in Physical Medicine and Rehabilitation, reviewed Brooks's medical history. *Id.* at 540-48. Kalter's review acknowledges that imaging and exams of Brooks show "continued nerve compression" and "L5-S1 disc space with joint osteophytes and L3-L4 degenerative changes with anterior osteophytes." *Id.* at 545. Kalter's report concluded that Brooks "can work eight hours per day, five days per week within the following restrictions and limitations: Sitting is restricted to six hours per day, one hour at a time. Standing and walking are restricted to three hours per day (combined), one hour at a time. Lifting, carrying, pushing and pulling are restricted up to 10 pounds frequently, 10 to 20 pounds occasionally and never greater than 20 pounds." *Id.* Kalter's report further recommended the following restrictions: "Reaching above the waist is restricted to occasionally. Reaching at waist level is restricted to frequently. Reaching below waist level is restricted to occasionally. Twisting, bending, crouching and crawling are restricted to never. There are no restrictions or limitations with fingering, grasping, feeling or handling." *Id.* at 546. Kalter attempted to consult with Brooks's treating physicians but was only

2

able to consult with Thomas Cain.  Kalter's report notes that he agreed with Cain's assessment that Brooks "has severe neuropathy and needs to be on . . . Lyrica, which makes it difficult for him to drive long distances affecting his job" and that Brooks is restricted to "light duty with lifting and bending."  *Id.*

Reginald A. Givens, M.D., Board Certified in Psychiatry & Neurology/Psychiatry, also reviewed Brooks's medical history.  *Id.* 534-39.  Givens concludes in his report that "there is a lack of objective evidence of cognitive impairment or impairment in activities of daily living."  *Id.* at 537.  Givens also says that Brooks's medical records "regarding mental status did not report problems with cognitive functioning" but instead "consistently reported the claimant's mood and affect were appropriate and that the claimant's memory was normal on actual exam."  *Id.*  Givens attempted, as Kalter did, to consult with Brooks's treating physicians but was also only able to consult with Cain.  Givens states in his report that "Dr. Cain himself stated the claimant was not impaired due to any psychiatric condition including the claimant's depression."  *Id.*  Givens considered the side effects of medication Brooks was prescribed, noting that Brooks "has been treated with Lexapro and information in records and teleconference with Dr. Cain does not report side effects to psychiatric prescribed medications that would cause any impairment affecting functional capacity."  *Id.*

Patricia Thal, a vocational consultant, reviewed Brooks's AmeriGas job description and the description of his occupation in vocational resources such as the Dictionary of Occupational Titles, Occupational Outlook Handbook, Occupational Information Network, and Standard occupational Classification coding system.  *Id.* at 582-86.  Thal considered whether Brooks could perform the duties of his own occupation with the restrictions noted in the medical review.  Thal classified Brooks's occupation as "Manager, Sales" or "Sales Manager."  *Id.* at 583.  She concluded that the "occupation is most often performed at a sedentary and light level of physical demand, based on

3

Department of Labor descriptions found in the [Dictionary of Occupational Titles]." *Id.* at 585. According to Thal's report, the Department of Labor defines sedentary work as:

> **S-Sedentary Work** - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

*Id.* at 583. The report goes on to state that positional requirements at the sedentary level include:

- **Frequent to Constant** sitting
- **Frequent** handling, fingering
- **Occasional** standing, walking
- **Occasional to Never** reaching (the majority of reaching can be reduced or eliminated by simple job modification of moving objects an ergonomically correct distance from the body.)
- **Never** bending/stooping, crouching/squatting, kneeling, crawling, climbing, balancing

*Id.* Her report states that opportunity exists at both levels. *Id.* at 585.

By letter dated November 22, 2016, Liberty informed Brooks that it was denying his claim. *Id.* at 511-17. Liberty determined that Brooks was able to perform sedentary work based on the limitations and restrictions noted in the reports of Kalter and Givens. *Id.* It concluded that Brooks was not disabled because he could perform the requirements of his own occupation and therefore denied him benefits under the policy. *Id.* Brooks notified Liberty on December 19, 2016, that he intended to appeal the denial of benefits. *Id.* at 504. On January 10, 2017, counsel for Brooks wrote to Liberty requesting Brooks's claim file and insurance policy and informing Liberty that Brooks would be submitting additional support for his claim. *Id.* at 501.

On May 17, 2017, Brooks's lawyer sent a letter along with additional documentation to Liberty appealing the denial of benefits. *Id.* at 65-472. The letter also requested an additional 90

4

days to supplement the record with "not-yet-available records." *Id.* at 655. Brooks argued in his appeal that "he cannot physically perform work at the sedentary strength level without Lyrica" and that by taking Lyrica "he cannot cognitively perform his own occupation" because of the side effects. *Id.* at 66, 69. Brooks included in his appeal a report from Thomas Cain, which states:

> I do not believe Mr. Brooks can perform his occupation as an Area Sales Manager because: (1) he suffers from diabetic neuropathy and severe pain in his lower extremities; (2) he lacks clarity of thought due to sedation and sluggishness caused by Lyrica, which is necessary to treat his diabetic neuropathy and severe extremity pain; (3) he cannot safely drive on Lyrica; (4) without Lyrica, he could not sit frequently or stand or walk occasionally; and (5) his condition is compounded by arthropathy and severe back pain.

*Id.* at 75-76. Brooks asked that "Liberty consult with health care professionals who have appropriate training and experience in the fields of medicine involved in the medical judgment." *Id.* at 69.

In considering Brooks's appeal, Liberty requested Heidi Klingbeil, M.D., Board Certified in Physical Medicine, Rehabilitation, and Pain Medicine, to review his claim. *Id.* at 36-44. Klingbeil attempted to consult with Brooks's treating physicians but was only able to speak with Cain. Klingbeil summarized the consultation with Cain in a letter to Cain dated June 13, 2017, as follows:

> Dr. Cain noted that the claimant has diabetic neuropathy, which is the cause of his impairment and restrictions and limitations. He is on Lyrica medication for this, but it makes him drowsy. As he had to drive out of state for his job, he was unable to do that. He notes that the claimant could perform sedentary work that was principally seated and with lifting limitations, however, on a full-time basis. He noted that his cognition and thinking seem to be about the same as it had been for many years and did not feel it was particularly affected by his diagnosis. We reviewed his treatment briefly and his prognosis which is rather poor for improvement given the diagnosis. We were in general agreement regarding these restrictions and limitations given the diagnosis.

*Id.* at 43. Cain responded on June 14, 2017, agreeing that the summary was an accurate representation of their conversation and his assessment of Brooks. *Id.* at 44. Klingbeil concluded

that Brooks "is a 63-year-old man with diabetic neuropathy as well as lumbar degenerative disc disease" and as a result "[h]e is appropriately restricted in his weightlifting as well as requiring some changes in position and limits on standing and walking, but within these limits, he would be able to perform full-time (8 hours per day, 5 days per week) activities." *Id.* at 36.

On June 21, 2017, Liberty sent a letter denying Brooks's appeal. Document #21-2. This case follows.

Brooks first argues that this Court should review the record de novo. The policy grants Liberty "the authority, in its sole discretion, to construe the terms of [the] policy and to determine benefit eligibility." Document #21-1 at 47. Generally, long-term disability policies that grant discretionary authority to the plan administrator to interpret the terms of the plan and to determine eligibility are reviewed under an abuse of discretion standard. *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 946 (8th Cir. 2000). A plan administrator's interpretation will be upheld under this standard unless it is arbitrary and capricious. *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010).

Brooks maintains that this Court should review the record de novo because Rule 101 of the Arkansas Insurance Commissioner forbids the inclusion of discretionary clauses in group disability plans. The Arkansas insurance rule is inapplicable unless Arkansas law applies. The policy was issued to AmeriGas, a Pennsylvania corporation, in Pennsylvania, and the policy states that Pennsylvania is the governing jurisdiction. Document #21-1 at 1. "Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." *Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan*, 774 F.3d 1193, 1197 (8th Cir. 2014). In *Brake*, the court found "nothing unreasonable or fundamentally unfair about enforcing the plan's Minnesota choice-of-law provision," explaining that "[t]he policy was written for a Minnesota

6

corporation and was issued to [the employer] in Minnesota." Notwithstanding Brooks's reliance on *Snyder v. Unum Life Ins. Co. of Am.*, No. CV 13-07522 BRO/RZX, 2014 WL 7734715, at *10 (C.D. Cal. Oct. 28, 2014), which refused to enforce a choice-of-law provision in circumstances similar to those presented here, this Court will follow *Brake*. The Court will review the record for an abuse of discretion.

Even under the abuse of discretion standard, Brooks argues that the Court should find that Liberty's decision was arbitrary and capricious. He begins by contending that the Court should afford Liberty's decision less deference because Liberty has a conflict of interest. When the administrator is also the insurer, as Liberty is here, the administrator has a conflict of interest that is a "factor in determining whether there is an abuse of discretion." *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S. Ct. 2343, 2350, 171 L. Ed. 2d 299 (2008). The conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.* at 117, 128 S. Ct. at 2351. Liberty's manager of the Appeal Review Unit testified that Liberty has taken many of the steps mentioned by example in *Glenn* to reduce bias and promote accuracy. Document #32-1. The Court will take into account both that Liberty is the insurer and determiner of eligibility and that it has taken active steps to reduce its potential bias.

Brooks also contends that the Court should afford Liberty's decision less deference because of procedural irregularities, mainly that Liberty did not consult with diabetic neuropathy or neurological surgical specialists and did not allow him to supplement the appeal with additional records. Not just any procedural irregularity will affect a court's review; instead the irregularity

7

must leave "the court with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996). Brooks has failed to demonstrate that either charge against Liberty so infected the process as to cast serious doubt on Liberty's decision. ERISA regulations require Liberty to "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii). The Court cannot say that Liberty failed to do that when it requested that Heidi Klingbeil, M.D., Board Certified in Physical Medicine, Rehabilitation, and Pain Medicine, Reginald A. Givens, M.D., Board Certified in Psychiatry & Neurology/Psychiatry, and Matthew H. Kalter, M.D., Board Certified in Physical Medicine and Rehabilitation review Brooks's medical history. ERISA regulations also require Liberty to have provided Brooks "at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination." *Id.* § 2560.503-1(h)(3)(i). Brooks's requested additional 90 days fell well outside the 180 days Liberty was required to provide for an appeal. Moreover, Brooks does not describe with any particularity the additional records that he would have submitted, let alone explain in what way the additional records would have altered the outcome of his claim.

Turning now to Liberty's disability determination, the group policy provides disability coverage for a participant:

i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

Document #21-1 at 8. The policy defines "Own Occupation" as "the Covered Person's occupation as it is normally performed in the national economy." *Id.* at 12. "Material and Substantial Duties" is defined as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified." *Id.* at 11.

The vocational expert determined that Brooks's occupation could be performed at either the sedentary level or light level and that opportunities existed at both levels in the national economy. Liberty determined that Brooks was not disabled because he could perform work at the sedentary level. Liberty did not deny Brooks's claim based on a light level of work.

Most of the reasons that Brooks gives in arguing that Liberty abused its discretion suffer from a common flaw. Each is premised on Liberty's failure to consider his particular responsibilities at AmeriGas as an "Area Sales Manager." For example, he says that his "own occupation as an Area Sales Manager included material and substantial duties that exceeded the sedentary strength level, including extensive travel and driving in a seven-state area." Document #27 at 15. The policy, though, defines "Own Occupation" as "the Covered Person's occupation as it is normally performed in the national economy." Brooks's "occupation as it is normally performed in the national economy" does not require extensive travel. Liberty's reliance on Thal's report and classification of Brooks's occupation is a reasonable interpretation and application of the policy's language.

Brooks also says that Liberty ignored evidence that he was unable to perform material and substantial duties of his occupation because of cognitive limitations. Specifically, he says that Klingbeil did not consider how Lyrica affected his cognitive abilities. The record shows otherwise. Brooks's own doctor, Thomas Cain, told Klingbeil that Brooks's diabetic neuropathy was the cause of his impairment and restrictions and limitations, that Brooks was on Lyrica to treat that condition,

9

that Lyrica made him drowsy, that Brooks could perform full-time sedentary work that was principally seated, provided there were lifting limitations, and that Brooks's cognition and thinking seemed to be unchanged for many years and unaffected by his diagnosis.  Additionally, Givens, Board Certified in Psychiatry & Neurology/Psychiatry, reviewed Brooks's medical history and concluded that "there is a lack of objective evidence of cognitive impairment or impairment in activities of daily living."

Brooks has not established that Liberty's decision was arbitrary and capricious.  The Court must uphold Liberty's decision as long as it is reasonable, meaning that substantial evidence exists to support it.  *See Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 989 (8th Cir. 2014).  This amounts to something "more than a scintilla but less than a preponderance."  *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir. 2008).  Based on the evidence in the record, "a reasonable person *could* have reached a similar decision."  *See Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 887 (8th Cir. 2002).  For the foregoing reasons, Roger Brooks's motion for judgment on the record is DENIED.  Document #26.  Judgment will be entered in favor of Liberty Life Assurance Company of Boston.

IT IS SO ORDERED this 19th day of July, 2018.

                                                                 J. LEON HOLMES
                                                                 UNITED STATES DISTRICT JUDGE